IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JULIO AGUILAR-PADILLA,**

      Plaintiff,

v.

**BOYDSTUN EQUIPMENT MANUFACTURING, LLC,**
      Defendant.

No. 3:21-cv-00753-MO

OPINION AND ORDER

**MOSMAN, J.,**

This matter comes before me on Plaintiff's Motion for Attorney Fees ("Mot.") [147]. For the reasons stated below, I GRANT Plaintiff's Motion, and I award attorney fees and costs of $453,005.91.

## BACKGROUND

Plaintiff Julio Aguilar-Padilla ("Plaintiff") sued his former employer on May 14, 2021, for terminating him and withholding sick pay during a state-mandated quarantine after his wife tested positive for COVID-19. Compl. [1] ¶¶ 1-2. He brought three claims: (1) failure to pay sick leave in violation of the Families First Coronavirus Response Act and Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("Claim One"); (2) retaliation in violation of the Oregon Safe Employment Act, Or. Rev. Stat. ("ORS") 654.062 ("Claim Two"); and (3) penalty wages for failure to pay wages due on termination under ORS 652.140-150 ("Claim Three"). *Id.* at 4-6.

I awarded Plaintiff partial summary judgment on Claims One and Three on July 20, 2023. Mins. of Proceeding [71]. A jury heard Claim One in part and Claim Two during a trial in December 2023 and found for Plaintiff, awarding him $60,000. Judgment [136]. In the end, Plaintiff succeeded on all three claims and won a total of $68,000, "with no prejudgment interest,

1 – OPINION AND ORDER

plus post judgment interest at the rate of 5.01% per annum, along with costs." *Id.* Plaintiff moved for attorney fees and costs on May 10, 2024 in the amount of $453,005.91. Mot. [147]; Declaration of Emily Fox ("Fox Decl.") [148] Exs. 1-14. Defendant objected and requested an adjustment down to $70,400 (or less) on the basis that Claim Two is not fee bearing and that the Court should reduce the non-claim specific time by 80%. Response to Motion for Attorney Fees ("Resp.") [161] at 9, 11.

I ordered supplemental briefing on whether the law underlying Claim Two, the Oregon Safe Employment Act ("OSEA"), ORS 654.062, provides for attorney fees. Order [171]. Plaintiff now agrees with Defendant and concedes it does not. Sur-Reply [178] at 3.

## DISCUSSION

### I. Attorney Fees and Costs

#### A. Entitlement to Fees

The general presumption is that each "litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 28 (2019). A plaintiff who seeks a fee award must first show a legal entitlement to fees on a claim-by-claim basis. Fed. R. Civ. P. 54(d) (prevailing party entitled to attorney fees and costs if provided by statute, rule, or order); United States District Court, Oregon, Local Rule ("LR") 54–3(a) (citing Fed. R. Civ. P. 54(d)(2)(B)).

##### i. Claims One and Three

The laws underlying Claims One and Three provide for mandatory fee shifting to a successful plaintiff. Plaintiff's Claim One alleged violation of the Families First Coronavirus Response Act ("FFCRA"), Pub. L. 116-127. Section 5104 of FFCRA prohibits discharge or discipline of any employee who "takes leave in accordance with this Act," while section 5105

provides that an "employer who willfully violates section 5104 shall . . . be subject to the penalties described in sections 16 and 17" of the Fair Labor Standards Act of 1938. *Id.* §§ 5104-05. Section 16 of the Fair Labor Standards Act ("FLSA") provides "[t]he court in such action **shall**, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C.A. § 216(b) (emphasis added). Plaintiff's Claim Three alleged a violation of ORS 652.140-150, which provides that:

> In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the wages became due and payable, the court **shall**, upon entering judgment for the plaintiff, include in the judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting the action, unless it appears that the employee has willfully violated the contract of employment or unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action. ORS § 652.200 (emphasis added).

Both statutes obligate me to award reasonable attorney fees and costs to a prevailing plaintiff.

### ii. Claim Two

The parties initially disagreed whether Claim Two—for retaliation in violation of the OSEA, ORS 654.062,—provides for fee-shifting. *Compare* Mot. [147] at 3-4, *with* Resp. [161] at 2. However, after I ordered supplemental briefing on the question, Order [171], Plaintiff conceded that ORS 654.062 does not provide a statutory basis for fees. Sur-Reply [178] at 3.

Despite this concession, Plaintiff maintains I have authority to award him a full award for two connected reasons. First, Plaintiff argues that full success on Claim One required a trial and "hinged on the jury's determination that his termination was unlawful," Mot. [147] at 4, which was a component of Claim Two. *Id.* Second, Plaintiff argues the work throughout the case on the First Claim, a fee-bearing claim, is "so intertwined" with the work done for the Second Claim, the non-fee bearing claim, "that the work done on them cannot be separated." Reply [165] at 2. The parties agree that even if there were no Claim Two, full resolution of this case would have required

3 – OPINION AND ORDER

a trial that closely resembled the actual trial I held in December 2023. Plaintiff is correct that because "a jury determination that Boydstun illegally fired Mr. Aguilar-Padilla would entitle him to an additional four days of sick leave pay under the FFCRA, the extent of Boydstun's liability on the First Claim also had to be resolved through a trial." Mot. at 3. The pretrial order and the parties' concessions during oral argument show they agree that a jury trial on Claim Two was necessary to fully resolve Claim One.

The parties also agree that the "inextricably intertwined" analysis is applicable, but they disagree as to how courts interpret that standard. As explained during oral argument, Plaintiff would like me to understand "intertwined" as sharing the same common nucleus of facts or a similar legal theory, such that the claims would be expected to be tried together. He bases this on the Supreme Court's reasoning in the civil rights case *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Defendant disagrees and argues that I must carve out the work only spent on Claim Two. Defendant adds that I should only award fees for work on Claim Two that contributed to Claim One or Three because doing otherwise would contravene congressional intent. However, Defendant has not identified any binding or persuasive authority in support of its reading.

The Ninth Circuit has not clearly instructed how to apply the "inextricably intertwined" standard to a pair of claims—one fee-bearing and one not—that were tried together and both fully successful. But dicta in *Armstrong v. Davis*, 318 F.3d 965, 975 (9th Cir. 2003), supports Plaintiff's reading of the standard. The panel in *Armstrong* upheld a district court's decision not to apply the Prison Litigation Reform Act's ("PLRA") limits on attorney fees to plaintiff's "tertiary" § 1983 claim because the work on that claim overlapped substantially with other claims, to which the PLRA limits did not apply, and barely required additional trial preparation. *Id.* In doing so, the Ninth Circuit panel cited a secondary source that interpreted *Hensley* as "'indirectly support[ing]'

4 – OPINION AND ORDER

the existing majority rule that if 'fee claims and non-fee claims were so intertwined that the time spent on the claims could not reasonably be divided, fees could be awarded for the entire case.'" *Id.* (quoting 1 Mary Francis Derfner & Arthur D. Wolf, Court Awarded Attorney Fees, ¶ 12.02[1][B] at 12–13 (2001)).

Given the overlap between the issues related to Claim One and Two, it is reasonable to conclude that Plaintiff would have done the vast majority of the same trial preparation even if Claim Two were not in the case. Accordingly, I find Plaintiff's work on the non-fee bearing Claim Two was "inextricably intertwined" with work done for the fee-bearing claims such that it cannot be meaningfully divided out.

Accordingly, I conclude that Plaintiff is entitled to fees for Claim Two.

## B. Amount of Fees

### i. Proportionality

Defendant's primary challenge to Plaintiff's requested fee award is the lack of proportionality between the damages Plaintiff won, $68,000, and the fees and costs his counsel seek, $453,005.91. Resp. at 6. Defendant cites *Vargas v. Howell*, 949 F.3d 1188 (9th Cir. 2020) to argue that I should analyze proportionality here by asking whether "the time could reasonably have been billed to a private client." Resp. [161] at 3 (citing *Id.* at 1194). Defendant would like me to apply a large cut to Plaintiff's fees based on proportionality alone, but *Vargas* explicitly bars me from doing so. *Vargas*, 949 F.3d at 1196. There, the panel reversed the district court's mechanical 90% reduction of fees because it lacked an adequate explanation for such a dramatic cut. *Id.* at 1195-96. The district court seemingly only considered that the attorney fees sought far exceeded the amount Plaintiff received in the settlement. *Id.* The Ninth Circuit noted this "is a

5 – OPINION AND ORDER

legitimate consideration in evaluating the reasonableness of the work performed," but it was incorrect for the court to "have treated it as dispositive." *Id.* at 1196.

The Supreme Court has said that in the civil rights context, a "rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). The Ninth Circuit has explicitly prevented courts from asking whether a private client would have reasonably paid the same legal fees when determining proportionality in civil rights cases and consumer protection cases. *See, e.g., McCown v. City of Fontana*, 565 F.3d 1097, 1104 (9th Cir. 2009) (civil rights); *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012) (consumer protection).

The Ninth Circuit has not, however, extended this rejection of strict proportionality to wage and hour employment cases like this one. The Second and Sixth Circuits have both explicitly found neither "'the text nor the purpose' of the FLSA 'supports imposing a proportionality limit on recoverable attorneys' fees.'" *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 617 (6th Cir. 2021) (quoting *Fisher v. SD Protection Inc.*, 948 F.3d 593, 603 (2d Cir. 2020)). The Sixth Circuit has explained the "very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them." *Rembert*, 986 F.3d at 617. "If courts in these cases capped the awardable fees at some percentage of that monetary value, therefore, many workers with valid FLSA claims—the nurse who was underpaid $1,500, the laborer underpaid $900—would be unable to 'attract competent counsel' to represent them." *Id.* (quoting *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).

Plaintiff here brought a wage and hour case that no private attorney likely would have taken, given the disproportion between the going rate for legal representation and the total sum of lost wages Plaintiff claimed. Accordingly, I decline to apply a broad cut to Plaintiff's requested fees based on proportionality alone, in line with the Second and Sixth Circuit's conclusions.

### ii. Reasonableness of Hours

"The evidentiary burdens governing fee motions are well established." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015). First, the applicant for fees "has an initial burden of production, under which it must 'produce satisfactory evidence' establishing the reasonableness of the requested fee." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Then if the applicant meets this burden, the court moves on to a "factual determination [which] will involve considering both the proponent's evidence and evidence submitted by the fee opponent 'challenging the accuracy and reasonableness of the facts asserted by the prevailing party.'" *Id.* (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)).

I find that Plaintiff has met his initial burden of production to establish the reasonableness of the requested fees. Based on my review of Plaintiff's detailed billing logs, Fox Decl. [148] Ex. 14, counsel spent presumptively reasonable time on this case. Plaintiff's counsel has also detailed voluntary reductions that they estimate total over $100,000, which underscores reasonableness. Mot. [147] at 8-9. I find Defendant, as the fee opponent, has not provided sufficient evidence to challenge "the accuracy and reasonableness of the facts asserted by" Plaintiff. *$28,000.00 in U.S. Currency*, 802 F.3d at 1105. Defendant only points to two specific entries as being excessive: 15 hours of oral argument preparation on a motion to dismiss and 19.8 hours for a trial cross-examination. Resp. [161] at 7. First, Defendant does not provide any evidence in support of his

attacks on these two entries. Second, on my own factual determination, I conclude that 15 hours total to prepare for the motion to dismiss hearing was reasonable, given the stakes of such a hearing. The cross-examination that Defendant pinpoints was for the key defense witness who fired Plaintiff—Mr. Boydstun. Reply [165] at 8. Plaintiff's successful cross-examination of Mr. Boydstun was key to his complete success at trial, which supports a finding that the time spent in preparation was reasonable. *Id.* While another lawyer may have litigated the case differently, the Ninth Circuit instructs me to "defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

I conclude that based on the submitted evidence, Plaintiff's counsel spent a reasonable amount of time on this case.

### iii. Reasonableness of Rates

Reasonable rates are set "according to the prevailing market rates in the relevant community, taking into consideration the experience, skill, and reputation of the attorney." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (citations omitted). I have previously recognized that the benchmark for determining the reasonableness of a local rate is the most recent Oregon State Bar Economic Survey. *Brady Mktg. Co. Inc. v. Kai U.S.A. Ltd.*, 2018 WL 3377083, at *3 (D. Or. July 11, 2018). Plaintiff's counsel relies on the 2022 Economic Survey, the most recent version available at the time of their motion. Mot. [147] at 6. The 2022 version does not include 75th percentile rates, which I have recognized is the standard in this district. *Brady Mktg. Co. Inc.*, 2018 WL 3377083, at *3.

8 – OPINION AND ORDER

To approximate the 75th percentile, Plaintiff's counsel added the median rate to the 95th percentile rate and divides by 2 to result in a rate that approximates the 72.5th percentile. Mot. [147] at 7. Plaintiff then approximated the inflation-adjusted rates for years 2022-2024, using an online inflation calculator. Fox Decl. [148] ¶ 22. Based on their years of experience, that leads to these rates for the three attorneys Plaintiff seeks to recover fees for:

| Attorney | 2021 Rate | 2022 Rate | 2023 Rate | 2024 Rate |
|---|---|---|---|---|
| Mark Bowers | $418 | $449 | $478 | n/a |
| Kelsey Heilman | n/a | n/a | $634 | $653 |
| Emily Teplin Fox | n/a | n/a | $634 | $653 |

Mot. [147] at 8. I conclude these rates are reasonable because they come directly from the Oregon State Bar Economic Survey in line with the standard practice in this district.

Taken together, the number of hours spent on this case multiplied by these rates results in a "presumptively reasonable" lodestar figure. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). The lodestar figure here is $442,706, and it is well-supported by the declaration submitted by Plaintiff's counsel. *See* Fox. Decl. [148].

### C. Costs

Plaintiff submits a well-documented Bill of Costs to support his demand of $10,229.21 in litigation costs. Fox Decl. [148] Ex. 1. Each cost has an accompanying receipt to substantiate it. *See id.* Exs. 2-12. Accordingly, I find these costs reasonable and award them in full.

## CONCLUSION

For the reasons stated, I GRANT in full Plaintiff's Motion for Attorney Fees and Costs [147].

IT IS SO ORDERED.

DATED this 17th day of December, 2024

MICHAEL W. MOSMAN
United States Senior District Judge

10 – OPINION AND ORDER